**JOHNSON v. JOHNSON et al.   (No. 2249.)**

Court of Civil Appeals of Texas.   El Paso.
April 11, 1929.

Rehearing Denied May 2, 1929.

House & Wilson, of Dallas, for appellant.
Ross M. Scott and Lively & Dougherty, all of Dallas, for appellees.

WALTHALL, J. This case presents a second appeal growing out of a divorce proceeding in which the appellant, Dixie L. Johnson, in April, 1923, brought a suit against Fill Johnson for divorce and a partition of their community property, and in which suit she alleged that she and her husband jointly owned a house and lot situated at No. 4435, Holland avenue, Dallas, Tex. Fill Johnson filed a cross-action in which he asked for a divorce, and further alleged that during their marital relations he deeded to his wife one-half interest in said house and lot situated as above. In a trial of the divorce case, in response to special issues the jury found against Dixie L. Johnson and in favor of Fill Johnson, and upon such findings judgment was entered denying her prayer for divorce and granting a divorce upon the cross-bill of Fill Johnson, and in the judgment the trial court canceled the deed of Fill Johnson conveying to Dixie L. Johnson his undivided interest in the house and lot involved in the suit. On appeal from that judgment the Texarkana court refused to disturb the decree for divorce, but held that the trial court, under the facts, was not authorized to render a judgment canceling the conveyance of the property, and set aside the judgment canceling the conveyance to the Holland avenue property and remanded the cause for further proceedings in the adjustment of the property rights of the parties. Johnson v. Johnson (Tex. Civ. App.) 272 S. W. 225.

On September 4, 1926, Dixie L. Johnson filed her amended petition in which she sued Fill Johnson in trespass to try title, describing said property, and alleges that said property is the identical land conveyed to her by Fill Johnson by warranty deed dated August 28, 1922.

Fill Johnson answered by general demurrer, general denial, plea of not guilty, and specially answered, in substance, that he owned said property before his marriage with Dixie Johnson, having purchased it in 1915; that he, together with his four children (of a former marriage), lived in said house as their home from the time of said purchase; pleaded, in substance, the facts and circumstances under which the conveyance was made to his wife as in his answer in the divorce suit, and set out in the former appeal with some additional facts, to which former appeal we refer without restating the facts here; and alleging that he had made certain improvements thereon and alleging the value of same;

and asked the cancellation of said conveyance.

Dixie L. Johnson answered, pleading, in legal effect, the holding of the Texarkana court on the former answer of Fill Johnson, and which we need not state more fully.

Elsie Johnson and Carmen Johnson, daughters of Fill Johnson, filed their plea and amended plea in intervention alleging, in substance, that the house and lot involved in the litigation were the community property of Fill Johnson and Annie Johnson, deceased, their father and mother, and that as heirs at law of their deceased mother they owned one-half of said property; that the same was purchased long prior to the death of the said Annie Johnson and at her death said property, being community property one-half thereof, as a matter of law, vested in interveners herein, and that subsequent to the death of their mother interveners continued to live upon said property and do and perform the household duties and to carry on said home in the manner as theretofore conducted by their mother; that Fill Johnson is their father; that he continued to live in said home while interveners were attending to the household duties and performing such other duties as were necessary and incident to a properly conducted home; that while said interveners were engaged in said duties said property became dilapidated and out of repair, and needed repairing; that "the said Fill Johnson, during 1918, in consideration for said services, by parol gift, conveyed and vested his one-half (½) interest in said property in the said interveners herein; that said interveners accepted his gift and continued in exclusive possession thereof, and since which time have used, occupied and enjoyed said property as their separate property, and were in such possession at the time said Dixie L. Johnson and the said Fill Johnson became husband and wife, and long prior thereo." Then follow statements of improvements on said property made by interveners, such as planting shade trees, shrubbery, papering, and painting the house, and certain repair work thereon, stating the values thereof.

Dixie L. Johnson answered said intervention by demurrers, general and special, which we need not state here all of which were overruled. She also denied that interveners were in exclusive possession of the property and alleged that Fill Johnson was in possession and control of the property at the time of his conveyance to her; that interveners well knew of the execution and delivery of the deed to her and never made claim of any kind to said premises until the filing of their intervention on the 16th day of May, 1927; but that interveners appeared as witnesses in behalf of their father on the former trial and testified that said property was the separate property of their father, and made no claim

to said property by verbal gift until long after the Court of Civil Appeals had set aside the former judgment canceling the deed from their father to her and remanded said cause.

Both parties moved for instructed verdict, which the court overruled, and submitted the case to the jury on special issues.

On special issues submitted the jury found:

1. Fill Johnson, in the year 1918, made a parol gift of the property in question to his daughters, Elsie and Carmen Johnson, interveners.

2. Fill Johnson delivered the property in question to his daughters, Elsie and Carmen Johnson.

3. Elsie and Carmen Johnson, with the knowledge and consent of Fill Johnson, and relying upon said parol gift, made valuable improvements on the property in question.

4. Elsie and Carmen Johnson expended $1,200 on the property in question for improvements thereon.

Dixie L. Johnson submitted and requested the giving of a number of special issues, all of which the court refused.

On the issues found by the jury the court entered judgment for Elsie and Carmen Johnson.

Dixie L. Johnson prosecutes this appeal.

### Opinion.

A very careful study of this record convinces us that only one question is presented, and that is the sufficiency of the evidence to sustain the findings of the jury on the several issues of fact submitted to them on the trial.

Appellant submits a number of propositions suggesting error arising on the trial in admitting or excluding evidence, and in refusing to submit tendered special charges on the matters at issue between appellant and Fill Johnson, all of which we have reviewed.

The trial court probably took the view that the defensive matters pleaded by Fill Johnson, if proved as pleaded, would not authorize the cancellation of the deed given by him to appellant, as held by the Court of Civil Appeals on the former trial, and as between appellant and Fill Johnson the trial court probably would have given an instructed verdict, if, in the judgment of the court, the legal effect of the defensive matters pleaded would not justify such cancellation. However that may be, in view of the record before us, we have concluded that it would serve no useful purpose to review, severally, the propositions submitted on the issues tendered by the pleading and the evidence as between appellant and Fill Johnson, but overrule them. It may be, as suggested by appellant, that the trial court should have given some expression of the court's view of the issues between appellant and Fill Johnson in the court's charge to the jury; but a failure to do, we think, does not present reversi-

ble error. The issues between appellant and interveners are so distinct from those between appellant and Fill Johnson that any errors in the admission or exclusion of evidence as between appellant and Fill Johnson could hardly create such prejudice in the minds of the jury as to influence the findings of the jury on the issues submitted, as suggested by appellant.

Interveners are the surviving children of Fill Johnson and his former deceased wife, Annie Strailey Johnson, and the evidence shows beyond controversy that the property in controversy is community property of Fill Johnson and the deceased mother of interveners. It is not suggested that the deceased made a will thereby passing the property to another. Interveners, as sisters and a brother, on the death of their mother, became the owners of one-half interest in the property and the surviving husband, Fill Johnson, was the owner of the other one-half. After the death of his wife, Annie Strailey Johnson, Fill Johnson married appellant and in consideration of $1 recited in the deed as paid, and love and affection, deeded to her his one-half interest in the property in controversy.

Interveners allege that subsequent to the death of their mother they continued to live upon the property, did the household duties, and carried on the household duties theretofore conducted by their mother; that said property became dilapidated and out of repair and needed repairing, and that in 1918, their father, Fill Johnson, in consideration of said services, by parol gift, conveyed his one-half interest in said property to them; that they accepted his gift and continued in exclusive possession, occupancy, and enjoyment of the property as their separate property and were so in possession and use at the time appellant and Fill Johnson became husband and wife; that subsequent to such parol gift, with the knowledge and consent of Fill Johnson, and to make said property suitable for a home, they expended money in its improvement, which the jury found to be $1,200.

The issue presented here is between the interveners' title by the parol gift from their father and the subsequent deed of conveyance from Fill Johnson to appellant.

■ Our courts uniformly recognize the validity of a parol sale or gift of land when all of the essential elements of such sale or gift are shown to be present. Such seems to have been the law with us since Garner v. Stubblefield, 5 Tex. 552.

As said by the Supreme Court in Hooks v. Bridgewater, 111 Tex. 122, 229 S. W. 1114, 15 A. L. R. 216. To relieve a parol sale of land from the operation of the statute of frauds, it must be shown, first, that the consideration, whether money or service, was paid or rendered; second, possession by the vendee; third, the making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced.

There were elements of fact in that case which were discussed at length, and which influenced the decision, and the case is valuable here only in the statement that Davis never placed the plaintiff in possession of any of the property which the opinion held to be necessary to the parol sale.

In Wooldridge v. Hancock, 70 Tex. 18, 6 S. W. 818, the court uses this language: "It is settled law in this state that where there has been a parol gift of land, and the donee put in possession, and thereby induced to spend large sums of money in making improvements, equity will enforce the gift. (Willis v. Matthews, 46 Tex. 482, 483; Murphy v. Stell, 43 Tex. 133; Hendricks v. Snediker, 30 Tex. 296). But it is necessary to the validity of a parol sale or gift of land in Texas, however the rule may be elsewhere, that possession be delivered and substantial and valuable improvements made, with the consent or knowledge of the vendor, upon the faith of such gift or sale; and that the mere taking possession or making improvements of insignificant value is not sufficient, especially where the value of the rents exceeds that of the improvements."

The Texas cases make it clear that when a parol sale or gift of land is made, and the vendee or donee takes possession, and, with the knowledge or consent of the vendor or donor, and in reliance on the parol sale or gift, makes valuable and permanent improvements, and occupies the premises, such vendee or donee must be considered the equitable owner and not the tenant of the vendor or vendee, since such facts, if shown, remove the case from the operation of the statute of frauds. Such facts, if shown, would take from Fill Johnson the power to convey his one-half interest in the property to appellant.

■ The evidence establishes the fact beyond controversy that the property in question was the community property of Fill Johnson and his first wife, the mother of interveners, and was the residence of Fill Johnson and interveners at the time of Fill Johnson's marriage to appellant in 1920, and at the time of the conveyance of his interest in said property by Fill Johnson to appellant in August, 1922. Interveners had continuously occupied the property as a place of residence since 1915. Fill Johnson testified that he moved away and went to Amarillo, left interveners in the house, and found them there on his return. (The time of his absence is indefinite, but apparently about 15 months.) He testified that interveners had spent several hundred dollars in repairs on the property. He testified that, prior to his marriage with appellant, "I made some disposition of this property during the year 1918, prior to my marriage contract with Mrs. Dixie L. Johnson. Well in doing this,

* * * the girls complained about having to put all of their money into it and I told them it was absolutely their stuff that they were putting their money in on; that it was their stuff. * * * Well the girls papered the house, painted it and helped buy the lumber, and put in all their money for anything that was needed. Yes, they were there when Mrs. Dixie L. Johnson came there in the house on Holland Avenue (with interveners' permission and some two years later), and they continued to occupy the property just as they had done prior to her coming out there. * * * At that time in 1918 I had three girls, all of them living at home, including the young lady that died, and she was working. The same talk with reference to giving the property to the girls occurred between all of us, all three of the girls and myself."

Miss Elsie Johnson, one of the interveners, testified: Was 30 years old; did repair work on the place; said: "My sister and I were discussing it and hated to put our money in it, and we asked father about it and he said: 'Go ahead and put your money in on the place; the place is yours and will always be yours.' My father did not pay me a cent for keeping the house for him. He did not pay us for keeping the house, and we were never disturbed in our possession of that property. * * * I did make those improvements with the knowledge of my father."

After testifying that her father told them of his contemplated marriage with appellant, and wanted to bring her to the house and she and her sister had agreed that he might do so, he said: "I will pay everything; everything will be all right; everything will be just like it is now. The place is yours and will always be yours."

Miss Carmen Johnson, one of interveners, testified. She said: "Yes, sir; we did have an agreement, after we were living on the Holland Avenue property with our father with reference to the ownership of that property. Well, we moved over there on this property on Holland Avenue and we took full charge of it. We took full charge and possession of this place on Holland Avenue and run the house. The house was in a dilapidated condition and needed repairing which we put our money in on it in making repairs on the house, and he (supposedly Fill Johnson) said: 'You go ahead and put your money in on the place. This place is yours. I have already given it to you.' So we went ahead and repaired the house and so he said he 'had given it to us.' He said he had given us this place and that is the reason we did that."

The witness then stated in detail the improvements made on the property, such as a new addition on the front, painting the house inside and outside, adding a new bedroom, planting shrubbery in the yard; that their father stayed out there. Said: "When he would come out there we could not run him off after he had given us this property." The telephone was in the father's name. Said: "He was a contractor and he wanted the telephone in his name." After the father's marriage with appellant 'he brought appellant there with interveners' consent and they paid some board, but no room rent. Said: "My father told us that if we would take this house and keep it that it was ours; that he had given it to us, and in accordance with the understanding we spent our money, kept and occupied the place and improved it, and made it our home. * * * We two girls worked out during the daytime. Elsie and I did the cooking there at the house. Elsie does the baking. I turn my money over to her and she checks on it. She had the checking account. Our father surely did know that we were placing these improvements on that property, and he did not make a bit of objections."

This intervention was not filed in the divorce proceedings, and not until the case on appeal had been remanded for further proceedings in adjusting the property rights of the parties, and there is much evidence in the record on this trial as to the testimony of interveners and others on the former trial, which we need not restate here, as none of the evidence goes to the issue of the sale or gift of the property, the fact now at issue, and such evidence offered to affect the evidence of interveners on this trial, all of which was before the jury.

The question now presented is: Does the evidence affirmatively show a gift to interveners by their father, Fill Johnson? Appellant presents a number of propositions questioning the sufficiency of the evidence to sustain the findings of the jury on each of the issues submitted and found. We have concluded on a very careful review of the evidence that the evidence is sufficient to show a parol gift by the father to his two daughters, interveners herein. In addition to the cases above referred to, we cite Wootters v. Hale, 83 Tex. 563, 19 S. W. 134, by the Supreme Court, a case on the facts not as conclusive as the case at bar; also Davis v. Portwood, 20 Tex. Civ. App. 548, 50 S. W. 615, a writ of error denied; and the several cases there referred to without stating them.

Appellant's propositions have each been considered and overruled.

The case is affirmed.